**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                     )<br>              v.                     )<br>                                     )<br>$455,273.72 IN FUNDS FROM            )<br>BANK OF AMERICA CHECKING             )<br>ACCOUNT #0019-2067-7376              )<br>HELD IN THE NAME OF THE              )<br>VOICE OF SOCIAL CONCERN              )<br>ASSOCIATION, INC., et al.,           )<br>                                     )<br>              Defendants.             )<br>                                     ) | Civil Action No. 05-356 |

**MEMORANDUM OPINION**

This action involves property that plaintiff, the federal government, alleges is forfeitable. The facts that form the basis of this civil *in rem* action are identical to those that formed the basis for the criminal prosecution and subsequent conviction of claimant Akube Wuromoni Ndoromo (a/k/a Akiuber Ndoromo James) for health care fraud and money laundering. *See* Criminal Case No. 06-19. The government contends that the defendant property is subject to forfeiture because, among other things, the jury in claimant's criminal action determined that the defendant funds and the defendant vehicles were traceable to the health care fraud and money laundering offenses. Pending before the Court is the government's motion for summary judgment. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the

Court concludes that plaintiff is entitled to summary judgment on Counts I and IV of the Verified Complaint.[1] Accordingly, and for the reasons stated herein, the Court **GRANTS** plaintiff's motion.

I.  **Background**

On or about January 10, 2001, Voice of Social Concern Association, Inc. ("VSCA") became a D.C. Medicaid transportation provider, eligible to receive reimbursements from Medicaid for the provision of non-emergency transportation of Medicaid recipients.  Pl.'s SMF ¶ 5.[2]  Claimant Ndoromo was the

---

[1]  Plaintiff only requested summary judgment as to Counts I and IV of the complaint (health care fraud and money laundering, respectively).  The other counts in the complaint relate to mail fraud (Count II) and wire fraud (Count III).  The Court will note, however, that the government did not pursue mail fraud charges against claimant in Criminal Case No. 06-19.  *See* Pl.'s SMF ¶¶ 21-22.  With respect to wire fraud, the Court will further note that the government moved to dismiss the wire fraud counts from the Superseding Indictment.  Pl.'s SMF ¶ 23 n.4.  In view of the government's inaction on these charges in claimant's criminal case, as well as the fact that the government asked the Court to enter "judgment in its favor" in this action, *see* Pl.'s Mot. at 2, the Court hereby, sua sponte, dismisses Counts II and III of the complaint for lack of prosecution subject to a motion for reconsideration for good cause shown by no later than October 10, 2011.

[2]  This background section is taken from plaintiff's "Statement of Material Facts as to Which There is No General Dispute," Docket No. 52, to which claimant Ndoromo failed to specifically respond.  The Court will note that it advised claimant Ndoromo that, with respect to plaintiff's motion for summary judgment, "'any factual assertions in the movant's affidavits will be accepted as being true unless [he] submit[ted] his own affidavits or other documentary evidence contradicting the assertion.'"  Docket No. 59 (quoting *Neal v.*

President/Chief Executive Officer of VSCA.  Pl.'s SMF ¶ 6. VSCA's business address, 3636 16th Street NW, Apartment B1235, Washington, DC 20010, also served as Mr. Ndoromo's residence. Pl.'s SMF ¶ 7.

Mr. Ndoromo and VSCA engaged in a scheme to defraud D.C. Medicaid by preparing and submitting false claims for transportation services.  Specifically, Mr. Ndoromo and VSCA would submit claims stating that it had provided transportation services to Medicaid beneficiaries, when, in fact, no such services had been rendered.  Pl.'s SMF ¶ 8 (citing Criminal Case No. 06-19, Docket No. 37 ("Verdict")).  Mr. Ndoromo completely controlled VSCA's bank accounts and signed D.C. Medicaid's Electronic Data Interchange ("EDI") [Direct Deposit] Enrollment Application as VSCA's Chief Financial Officer/Authorized Representative.  Pl.'s SMF ¶ 9.  Mr. Ndoromo signed claims purporting to document transportation services provided to beneficiaries and then submitted them to Affiliated Computer

---

*Kelly*, 963 F.2d 453 (D.C. Cir. 1992)).  As claimant Ndoromo failed to respond to plaintiff's statement of material facts, the Court may deem plaintiff's facts as conceded. *See* Local Rule 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  The Court will note, however, that the government's statement of material facts is primarily derived from (i) claimant's answer in this case and (ii) the jury verdicts in claimant's related criminal action.

Services ("ACS"), the company that handled billing for the District of Columbia's Medicaid Program. Pl.'s SMF ¶¶ 10, 4.

In response to claims submitted by Mr. Ndoromo on behalf of VSCA, D.C. Medicaid mailed approximately ninety-nine checks to Mr. Ndoromo at his residence. These Medicaid checks were deposited into VSCA's Bank of America, N.A. ("BOA") checking account number 0019 2067 7376. Pl.'s SMF ¶ 11. D.C. Medicaid also sent reimbursements directly by wire to VSCA's BOA checking account number 0019 2067 7376, which Mr. Ndoromo controlled. Pl.'s SMF ¶ 12. D.C. Medicaid paid VSCA at least $1,550,767.46 for transportation services. Pl.'s SMF ¶ 13.

On December 20, 2004, a United States Magistrate Judge in the District of Columbia issued four seizure warrants. Pl.'s SMF ¶ 14. One warrant authorized seizure of a "2004 Land Rover, Discovery II, Sport Utility Vehicle, DC Tag CB2367, VIN SALTR19434A829815 registered in the name of [Ndoromo]." Pl.'s SMF ¶ 14 (citing Seizure Warrant, Mag. No. 04-M-796).[3] A second warrant authorized seizure of a "2001 Chevrolet 3500 Express Van, DC Tag B40149, Vehicle Identification Number 1GAHG39R211120100." Pl.'s SMF ¶ 14 (citing Seizure Warrant,

---

[3] On July 19, 2004, Mr. Ndoromo wrote a $35,000 check from VSCA's BOA checking account number 0019 2067 7376 for the entire purchase price of the defendant Land Rover. Pl.'s SMF ¶ 20.

4

Mag. No. 04-M-797).[4]  A third warrant authorized seizure of "[a]ny and all funds in the following accounts at [BOA], held in the name of [VSCA]: (1) #0019 2067 7376 (checking account); (2) #910 000 0658 0436 (CD account); (3) #910 000 0665 2911 (CD account); and (4) #910 000 1557 3214 (CD account); and [a]ny and all funds in [BOA], checking account #0019 2315 5727, held in the name of [Ndoromo]."  Pl.'s SMF ¶ 14 (citing Seizure Warrant, Mag. No. 04-M-798 (D.D.C. December 20, 2004)).[5]  A fourth warrant authorized seizure of "[a]ny and all funds in the following

---

[4]  Between January 22, 2002 and March 18, 2003, Mr. Ndoromo wrote sixteen checks totaling $25,322.87, from the VSCA's BOA checking account number 0019 2067 7376 to GMAC to make payments on the defendant Chevrolet Express.  Pl.'s SMF ¶ 20.

[5]  Mr. Ndoromo opened, in the name of VSCA, three CD accounts at BOA: (1) account number 910 000 0658 0436; (2) account number 910 000 0665 2911; and (3) account number 910 000 1557 3214. Pl.'s SMF ¶ 17.  The funds deposited into those CD accounts were either directly transferred from VSCA's BOA checking account number 0019 2067 7376, or originated from that account.  Pl.'s SMF ¶ 17.  Specifically, on January 16, 2002, $20,000 was transferred into account number 910 000 0658 0436.  Pl.'s SMF ¶ 17.  On April 23, 2003, $50,000 was transferred into account number 910 000 0665 2911.  Pl.'s SMF ¶ 17.  And on September 15, 2003, $100,000 was transferred into account number 910 000 1557 3214.  Pl.'s SMF ¶ 17.

In addition, from January 31, 2003, through August 11, 2004, Mr. Ndoromo transferred funds from VSCA's BOA checking account number 0019 2067 7376 to his personal BOA checking account number 0019 2315 5727 by writing checks to himself. Pl.'s SMF ¶ 18.  During that time period, Mr. Ndoromo also transferred approximately $96,100 into account number 0019 2315 5727.  Pl.'s SMF ¶ 18.  VSCA's BOA checking account #0019 2067 7376 funded approximately 98.6% of the deposits into Ndoromo's BOA personal account number 0019 2315 5727.  Pl.'s SMF ¶ 18.

accounts at Citibank, FSB ("Citibank"), held in the name of [Ndoromo] (1) #16196821 (CD account); (2) #6737246044; and (3) #6737691961." Pl.'s SMF ¶ 14 (citing Seizure Warrant, Mag. No. 04-M-799 (D.D.C. December 20, 2004)).[6]

The seizure warrants for the funds in the bank accounts were executed on December 21, 2004. Pl.'s SMF ¶ 15. The seizure warrants for the vehicles along with two search warrants were executed on December 22, 2004. Execution of the four seizure warrants resulted in the seizure of the following ten items:

- $455,273.72 in funds from BOA checking account number 0019 2067 7376, held in the name of VSCA;

- $20,749.93 in funds from BOA Certificate of Deposit ("CD") account number 910 000 0658 0436, held in the name of VSCA;

- $51,035.88 in funds from BOA CD account number 910 000 0665 2911, held in the name of VSCA;

- $101,563.35 in funds from BOA CD account number 910 000 1557 3214, held in the name of VSCA;

---

[6] Mr. Ndoromo had opened three personal accounts at Citibank by transferring funds from VSCA's BOA checking account number 0019 2067 7376: (1) account number 16196821; (2) account number 67372469044; and (3) account number 6737691961. Pl.'s SMF ¶ 19. Specifically, on July 3, 2003, $50,000 was transferred into Account Number 16196821, and on April 2, 2004, $250,000 was transferred into that account. Pl.'s SMF ¶ 19. On May 24, 2003, $100,000 was transferred into Account Number 67372469044. Pl.'s SMF ¶ 19. And on July 14, 2003, $5,000 was transferred into Account Number 6737691961. Pl.'s SMF ¶ 19. Ndoromo was the only signatory on these three Citibank accounts. Pl.'s SMF ¶ 19.

- $4,309.21 in funds from BOA checking account number 0019 2315 5727, held in the name of Mr. Ndoromo;

- $404,159.73 in funds form Citibank money market account number 16196821, held in the name of Mr. Ndoromo;

- $41,034.09 in funds from Citibank checking account number 67372469044, held in the name of Mr. Ndoromo;

- $9,784.38 in funds from Citibank checking account number 6737246044, held in the name of Mr. Ndoromo;

- one dark blue/green 2004 Land Rover Discovery II, sport utility vehicle, bearing VIN: SALTR19434A829815, registered to Mr. Ndoromo; and

- one blue 2001 Chevrolet 3500 Express van, bearing VIN: 1GAHG39R211120100, registered to Mr. Ndoromo.

Pl.'s SMF ¶ 15. These funds and vehicles are the defendants in this *in rem* forfeiture action (hereinafter, the "defendant funds" and the "defendant vehicles"). Pl.'s SMF ¶ 15.

On March 2, 2005, Mr. Ndoromo and VSCA filed a claim of ownership for the defendant funds and the defendant vehicles. Pl.'s SMF ¶ 16; *see* Docket No. 2. On March 3, 2005, claimants filed an Answer. Pl.'s SMF ¶ 16; *see* Docket No. 3. Thereafter, on March 14, 2005, claimants filed an amended verified claim of ownership for the defendant funds and defendant vehicles. Pl.'s SMF ¶ 16; *see* Docket No. 4.[7]

---

[7] No other party filed a claim or pleading challenging the forfeiture of the defendant currency and the time for filing such a claim has expired. Pl.'s SMF ¶ 29 (citing 18 U.S.C. § 983(a)(4)(A)).

On January 25, 2006, Mr. Ndoromo and VSCA were indicted by a federal grand jury in Criminal Case No. 06-19 on twenty-seven charges, including health care fraud, in violation of 18 U.S.C. § 1347; wire fraud, in violation of 18 U.S.C. § 1343; false statements regarding health care matters, in violation of 18 U.S.C. § 1035(a)(2); and money laundering, in violation of 18 U.S.C. § 1957. Pl.'s SMF ¶ 21; *see also* Criminal Case No. 06-19, Docket No. 1 ("Indictment"). The Indictment also alleged forfeiture of the defendant funds and the defendant vehicles. Pl.'s SMF ¶ 21. Soon thereafter, on February 1, 2006, a Superseding Indictment charged Mr. Ndoromo and VSCA with twenty-six counts relating to VSCA's fraudulent billing scheme to Medicaid. Pl.'s SMF ¶ 21; *see also* Criminal Case No. 06-19, Docket No. 3 ("Superseding Indictment"). On July 16, 2006, the Court issued an order staying this matter while Criminal Case No. 06-19 was pending.

On March 30, 2007, a jury in the criminal case found Mr. Ndoromo guilty of Count One (health care fraud), Counts Six through Sixteen (false statements relating to health care matters), and Counts Nineteen through Twenty-Six (money laundering). Pl.'s SMF ¶ 23; *see also* Criminal Case No. 06-19,

Docket No. 37 ("Verdict").[8]  The jury also returned special verdicts regarding the forfeiture allegations.  Pl.'s SMF ¶ 24; *see also* Criminal Case No. 06-19, Docket No. 41 (the "Special Verdict").  Specifically, the jury unanimously found that $1,856,812.71 represented the sum of money constituting, or derived from, proceeds traceable to the health care fraud.  Pl.'s SMF ¶ 24 (citing Special Verdict).  The jury further found the same sum of money to have been involved in or traceable to property involved in the money laundering offense.  Pl.'s SMF ¶ 24 (citing Special Verdict).  The jury also found that the 2004 Land Rover Discovery II and the 2001 Chevrolet 3500 Express van were derived from proceeds traceable to the health care fraud, and were involved in or traceable to property involved in the money laundering.  Pl.'s SMF ¶ 24 (citing Special Verdict).

On October 22, 2008, Mr. Ndoromo was sentenced in Criminal Case No. 06-19 to 57 months imprisonment and 36 months of supervised release.  Pl.'s SMF ¶ 28.  The Court orally announced that it was ordering, as part of Mr. Ndoromo's sentence, forfeiture of the criminal proceeds in the form of a money judgment, and forfeiture of the defendant vehicles.  Pl.'s SMF ¶ 28; *see also* Criminal Case No. 06-19, Docket Nos. 122-123 (orders of criminal forfeiture).  In addition, at the request of

---

[8]  Counts Two through Five (wire fraud) and Seventeen and Eighteen (false statements relating to health care matters) were dismissed at the government's request.  Pl.'s SMF ¶ 23 n.4.

9

the government, the Court subsequently amended the Judgment and Commitment Order in Criminal Case No. 06-19 to incorporate, by reference, the criminal forfeiture orders that were entered in that case. *See* Criminal Case No. 06-19, Docket No. 152.

Following Mr. Ndoromo's sentencing, the government filed a motion to lift stay and for summary judgment. The Court granted the government's motion to lift stay on September 1, 2009. Claimant Ndoromo thereafter filed an opposition to the government's motion for summary judgment. Accordingly, the government's motion for summary judgment is now ripe for determination by the Court.

**II. Legal Framework**

    **A.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issues of material fact. *Celotex*, 477 U.S. at 322. In determining whether a genuine issue of material facts exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986); *Keyes v. District of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

**B.    CAFRA**

The Civil Asset Forfeiture Reform Act ("CAFRA") authorizes the government to seize any property (except real property pursuant to 18 U.S.C. § 985) that is "subject to forfeiture." *See* 18 U.S.C. § 981(b)(1). Property is subject to forfeiture if it "constitutes or is derived from proceeds traceable to . . . any offense constituting a 'specified unlawful activity,'" *id.* § 981(a)(1)(C), such as health care fraud, *see id.* § 1956(c)(7). In addition, 18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of property, real or personal, involved in money laundering.

CAFRA requires the government to prove that property is subject to forfeiture by a "preponderance of the evidence." *Id.* § 983(c)(1). The government is permitted, however, to "use evidence gathered after the filing of a complaint for forfeiture

11

to establish, by a preponderance of the evidence, that property is subject to forfeiture." *Id.* § 983(c)(2).

## III. Analysis

The government argues that it is entitled to summary judgment because Mr. Ndoromo – the owner of the defendant *res* – was found guilty of health care fraud and money-laundering involving the defendant funds and the defendant vehicles in Criminal Case No. 06-19.[9] Specifically, the government contends that because Mr. Ndoromo's conviction in Criminal Case No. 06-19 was based upon the same facts as those alleged in Counts I and IV of the Verified Complaint in this action,[10] it has shown that the defendant *res* is subject to forfeiture by a preponderance of the evidence as required by CAFRA. *See* Pl.'s Mot. at 10 ("Because Ndoromo was found guilty beyond a reasonable doubt of health care fraud and money-laundering, there is ample evidence to establish by a preponderance of the evidence that the defendant funds and vehicles are civilly forfeitable.").

---

[9] Plaintiff asserts, and this Court agrees, that as Mr. Ndoromo's alter ego, VSCA lacks Article III standing to contest the forfeiture of the defendant funds and defendant vehicles. Pl.'s Mot. at 8-10; *see also* Pl.'s SMF ¶¶ 6-20.

[10] Count I of the Verified Complaint asserts, among other things, that "[t]he defendant funds and automobiles are subject to forfeiture because they constitute or are derived from, proceeds traceable to a violation of health care fraud." Compl. ¶ 30. Count IV of the Verified Complaint asserts, among other things, that "[t]he defendant funds and automobiles are subject to forfeiture because are property involved in money laundering." Compl. ¶ 39.

Primarily for the reasons stated in plaintiff's motion and reply brief, this Court agrees and finds that the defendant funds and the defendant vehicles are subject to forfeiture.

In reaching this conclusion, the Court is particularly persuaded by the Special Verdict in Criminal Case No. 06-19, which states, in relevant part:

- "We, the jury, unanimously find, by a preponderance of the evidence, that $1,856,812.71 represents the sum of money constituting, or derived from, proceeds traceable to the health care fraud offense charged in Count One."

- "We, the jury, unanimously find, by a preponderance of the evidence, that the following property represents the property constituting, or derived from, proceeds traceable to the health care fraud offense charged in Count One: (a) one dark blue/green 2004 Land Rover Discovery II, sport utility vehicle, bearing vehicle identification number SALTR19434A829815 and tag CB2367, registered in the name of Akube Ndoromo[; and] (b) one blue 2001 Chevrolet 3500 Express van, bearing vehicle identification number 1GAHG39R211120100 and tag B40149, registered in the name of Akube Ndoromo."

- "We, the jury, unanimously find, by a preponderance of the evidence, that $1,856,812.71 represents the sum of money that was involved in the money laundering offense, or traceable to property involved in the money laundering offense charged in Counts Nineteen through Twenty-Six."

- "We, the jury, unanimously find, by a preponderance of the evidence, that the following property was involved in the money laundering offense, or traceable to property involved in the money laundering offense charged in Counts Nineteen through Twenty-Six: (a) one dark blue/green 2004 Land Rover Discovery II, sport utility vehicle, bearing vehicle identification number SALTR19434A829815 and tag CB2367, registered in the name of Akube Ndoromo[; and] (b) one blue 2001 Chevrolet 3500 Express van, bearing vehicle identification number 1GAHG39R211120100 and tag B40149, registered in the name of Akube Ndoromo."

Criminal Case No. 06-19, Docket No. 41.[11]  Because "[t]he doctrine of issue preclusion or collateral estoppel bars [a claimant]'s attempt to relitigate in [a] civil proceeding an issue of fact fully litigated in a prior criminal proceeding and necessary and essential to the judgment of conviction entered in the criminal matter," *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 253 (E.D. Va. 1993); *see also* Pl.'s Mot. at 7-8 (citing additional cases), the Court finds that there are no genuine issues of material fact as to whether the defendant funds and the defendant vehicles are forfeitable.

Nor is the Court persuaded by claimant Ndoromo's assertions to the contrary.  Mr. Ndoromo's principal argument in opposition to the government's motion is that awarding the government the relief it seeks would violate the constitutional proscription against double jeopardy because this civil forfeiture action is based upon the same facts that formed the basis for his criminal conviction.  *See* Claimant's Opp'n at 2 (arguing that "seizure under Fed. R. Crim. P. Rule 41 constitute[s] criminal punishment

---

[11] The government further asserts that: (i) "Ndoromo admitted that Medicaid funds (which the jury determined resulted from a health care fraud scheme) were initially deposited into VSCA's BOA checking account #0019 2067 7376," Pl.'s SMF ¶¶ 11-12; (ii) "Ndoromo further admitted that he then transferred funds from that account into the various accounts that were seized," Pl.'s SMF ¶¶ 17-20; and (iii) "[Ndoromo] also admitted that he paid for the defendant vehicles with Medicaid funds," Pl.'s SMF ¶ 20.

14

for double jeopardy purpose [sic] in civil procedures [sic]."). That argument, however, is without merit, as the Supreme Court has held that "in rem civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *United States v. Ursery*, 518 U.S. 267, 292 (1996). Indeed, that Court went on to explain that "Congress [has] long . . . authorized the Government to bring parallel criminal procedures and civil forfeiture proceedings, and this Court has consistently found civil forfeitures not to constitute punishment under the Double Jeopardy Clause." *Id.* at 287-88. To the extent, therefore, that Mr. Ndoromo suggests anything to the contrary, his position must be rejected.

Claimant Ndoromo next argues that the seizure warrants were illegal because of the interplay between civil forfeiture law and criminal law. *See* Claimant's Opp'n at 2 (attacking the government's use of Rule 41 of the Federal Rules of Criminal Procedure in a civil action); *see also* Claimant's Affidavit, Docket No. 62 ¶ 3 ("Government used Federal Rule of Criminal Procedure Rule 41, in a civil procedure and in contempt of this Court."). The Court finds this argument similarly misplaced. As the government explains, "[t]he civil forfeiture statute, Section 981, specifically states that 'seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules

of Criminal Procedure . . . .'" Pl.'s Reply at 7 (citing 18 U.S.C. § 981(b)(2)). The Court is not persuaded, therefore, that the "double jeopardy clause bars government [sic] from civil procedure on in rem forfeiture using criminal procedure in civil action." Claimant's Opp'n at 3. Nor is the Court persuaded that the government violated the Federal Deposit Insurance Act when it seized the defendant bank accounts pursuant to the seizure warrants issued by this court. *See* Claimant's Opp'n at 2-3.

The Court, therefore - having rejected Mr. Ndoromo's arguments that forfeiture of the defendant property would violate the constitutional proscription against double jeopardy or is otherwise illegal - concludes that summary judgment is warranted in favor of the government. Indeed, the Court finds that there is ample evidence from the criminal trial of Mr. Ndoromo, over which this Court presided, that (i) Mr. Ndomoro perpetrated a health care fraud scheme in which he obtained over $1,856,812.71 in proceeds; and (ii) laundered those proceeds by transferring them into numerous bank accounts and purchasing the two defendant vehicles. Accordingly, the Court finds that the government has demonstrated that the defendant property is subject to forfeiture by a preponderance of the evidence.

**IV. CONCLUSION**

In sum, the Court finds that the defendant funds and the defendant vehicles are subject to forfeiture. Accordingly, for the foregoing reasons, the Court **GRANTS** plaintiff's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Court Judge**
**            September 26, 2011**